LE BLANC, Justice.
Plaintiffs are the children and grandchildren of Peter Knight who died on Do *486 cember 21, 1947. They have filed this suit against Leonise Bellanger Knight, his wife by second marriage and now his widow, and against Sidney J. Delaune and Eugene G. Gouaux, the latter two being vendees in an act of sale executed by Peter Knight some two months before his death.
The objects of the suit are (1) to set aside the act of sale on the grounds of mental incapacity of the said Peter Knight; fraud, simulation, lack of consideration; lack of consent and lesion beyond moiety; (2) to receive an accounting from the alleged vendees for moneys and rentals received by them for use and occupancy of the land; and (3) to receive an accounting from Leonise Bellanger Knight for the proceeds of the sale, allegedly the separate property of the deceased, and for certain community property in her possession at the time of his death. •
The real property involved is a tract of land containing 104 acres in Lafourche Parish, situated some seven miles from the public highway along Bayou Lafourche, more than 80 acres of which consist of marsh land not susceptible of cultivation. The consideration stated in the deed was $4,000 cash.
The defendants filed identical answers in which they denied the allegations of the petition and averred that the sale of the real property was legal and proper in all respects. With regard to the other property, an accounting for which is demanded from Leonise Bellanger Knight, it is alleged that Peter Knight had sold this property and that none of it remained at the time of his death.
After trial on the merits, there was judgment in favor of Sidney J. Delaune and Eugene G. Gouaux, dismissing the demands of the plaintiffs as to them, and judgment in favor of the plaintiffs against Mrs. Leonise Bellanger Knight, ordering her to render an accounting of all assets of her late husband in her possession as of the day of his death. In compliance with the judgment Mrs. Knight filed an accounting in which she listed certain movable effects and some cash which was the separate property of her deceased husband. As to the former, she claimed ownership of one-half and the usufruct of the balance. As to the latter she showed a balance of only $30 which she claimed as a widow in necessitous circumstances. From the judgment as rendered plaintiffs have taken this appeal.
Plaintiffs re-urge on appeal all of the grounds for annulling the sale. They do not contest the accounting filed by the defendant, Leonise Bellanger Knight, in conformity with the order rendered, and it would seem that that part of the judgment is not an issue on this appeal.
, Defendants objected to testimony offered by plaintiffs to show lack of mental capacity on the part of Peter Knight prior to, and on October 28, 1947, the day on which he executed the act of sale to the *488 defendants Delaune and Gouaux. The objection was based on the provisions of Article 403 of the LSA-C.C. and partly also on some of the provisions of Article 1788, and it was sustained by the trial judge.
Article 403, LSA-C.C., reads as follows:
“After the death of a person, the validity of acts done by him can not be contested for cause of insanity, unless his interdiction was pronounced or petitioned for previous to the death of such person, except in cases in which the mental alienation manifested itself within ten days previous to the decease, or in which the proof of the want of reason results from the act itself which is contested.”
Article 1788, LSA-C.C., provides certain rules to be observed in respect to suits to invalidate contracts on account of insanity. Rule 5 of the Article provides: “That if the party die within thirty days after making the act or contract, the insanity may be shown by evidence, without having applied for the interdiction; but if more than that time elapse, the insanity can not be shown to invalidate the act or contract, unless the interdiction shall have been applied for, except in the case provided for in the following rule.” The exception provided for in the following rule which is Rule 6, is in case the act contains any evidence of insanity in the party.
The act of sale which is contested in. this case was executed more than thirty days before the death of the stated vendor, Peter Knight; there is not the least indication that his interdiction was, ever petitioned for and the mental alienation complained of did not manifest itself ten days previous to his decease. On its face the act .is regular in all respects and there is nothing in it from which results proof of the want of reason on the part of anyone who had anything to do with it. Clearly therefore, under the authority of the cited provisions of the Civil Code, the objection was properly maintained.
The allegations of fraud, simulation, lack of consideration and lack of consent are based on charges that Peter Knight did not want to séll, and in fact did not sell his property. The .contention made is that Leonise Bellanger Knight, his wife made the arrangements for the sale and led him to believe that he was applying for relief. It is also charged that no money was passed at the time the sale was executed.
These charges ate not borne' out by the evidence. The testimony preponderates to the effect that Peter Knight himself had offered his property to many persons before finding a buyer. The notary before whom the act was passed and the two witnesses before whom it was executed, testified that the cash consideration of $4,000 was given .to the vendor, who, they said, would not affix his signature by mark until he had received the money. Considerable testimony, was adduced, with regard *490 to the bank accounts and statements of the vendees but it availed no countervailing proof to the fact otherwise established that the consideration' actually was paid.
The greater part of thé evidence adduced by plaintiffs was directed at showing that lesion beyond moiety existed. After testimony relating to the vendor’s alleged mental incapacity was ruled inadmissible, this became the main ground of attack on the sale. One of plaintiffs’ witnesses testified that he would not buy the property when it was offered to him at $6,000. His testimony led their counsel to plead surprise and he was vigorously cross-examined as a hostile witness. Another witness for the plaintiffs stated that $4,000 was a fair price if the land was fenced in; that it would be worth twice that much to a young man who wanted it for grazing purposes if it were not fenced in and cattle were permitted to roam at large on the surrounding lands. This is a condition which cannot be taken into account in fixing the value of the property. M.any of the witnesses were relatives of the plaintiffs who merely stated that they would not have sold the property for less than $10,000. In fact some stated they would not sell it at any price.
The property, as previously stated, is situated some seven miles from the main highway along Bayou Lafourche and is reached by a road, part of which is still a dirt road. The twenty acres which are adaptable to cultivation can produce the usual crops that are grown in that section but money crops, such as sugar cane, cannot be profitably produced because of inaccessibility to a sugar mill. The rest of it is marsh land which can be and has been leased for trapping fur bearing animals but the results have never amounted to anything very substantial and in the last few years have been anything but encouraging.
Plaintiffs laid great stress on the potential mineral value of the property. However, though it is shown to have been under lease a few years ago, the proof is that there has been no oil leasing activity in that area for the past few years, and there is certainly none at present.
We conclude that there is nothing to indicate that the property was worth more than the $4,000 that was paid for it, and beyond question, that amount was not less than one-half of its value.
For these reasons the judgment appealed from is found to be correct and it is therefore affirmed at the costs of the plaintiffs appellants, herein.